**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| _____ ) | |
| ) | |
| JIANGXI BROTHER PHARMACEUTICAL ) | |
| CO., LTD., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 25-00187 |
| ) | |
| UNITED STATES, ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| SOLVAY USA, LLC, ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
<u>**MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

|  |  |
|---|---|
| | BRETT A. SHUMATE |
| | Assistant Attorney General |
| | |
| | PATRICIA M. McCARTHY |
| | Director |
| | |
| | GEOFFREY M. LONG |
| OF COUNSEL: | Assistant Director |
| | |
| JOSHUA ANGELO | REBECCA T. MITCHELL |
| Attorney | Trial Attorney |
| Office of the Chief Counsel | Commercial Litigation Branch |
|    for Trade Enforcement and Compliance | Civil Division, U.S. Department of Justice |
| U.S. Department of Commerce | P.O. Box 480, Ben Franklin Station |
| Washington, D.C. | Washington, D.C. 20044 |
| | (202) 616-0467 |
| | |
| June 26, 2026 | Attorneys for Defendant |

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

|  |  |  |
|---|---|---|
| JIANGXI BROTHER PHARMACEUTICAL CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 25-00187 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| SOLVAY USA, LLC, | ) ) | |
| Defendant-Intervenor. | ) ) | |

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____         _____
       New York, New York                              JUDGE

ii

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iv

STATEMENT PURSUANT TO RULE 56.2 ............................................................................... 2

I.      Administrative Determination Under Review ................................................................. 2

II.     Issues Presented for Review ........................................................................................... 2

STATEMENT OF FACTS ........................................................................................................... 2

I.      Initiation of Commerce's Antidumping Duty Investigation ............................................ 2

II.     Surrogate Country Selection and Surrogate Values ........................................................ 3

III.    Commerce's Final Determination .................................................................................... 5

SUMMARY OF ARGUMENT .................................................................................................... 6

I.      Standard of Review ......................................................................................................... 6

II.     Legal Framework for Surrogate Value Selections .......................................................... 8

III.    Commerce's Use of GTA Data as The Surrogate Value for The By-Product Hydroquinone Is Supported by Substantial Evidence And in Accordance with the Law ......................... 10

IV.     Commerce's Selection of Surrogate Financial Statements From SQM And Soprole Is Supported by Substantial Evidence And in Accordance With The Law ......................... 14

        A.      The Use of SQM's Financial Statements is Reasonable ..................................... 16

        B.      The Use of Soprole's Financial Statement Is Reasonable .................................. 18

        C.      Commerce Reasonably Declined to Select Financial Statements from Methanex, MNS, and/or Copeval .......................................................................................... 19

V.      Jiangxi Brother's Arguments Regarding Commerce's Differential Pricing Methodology Are Immaterial And Unripe for Adjudication ................................................................ 22

CONCLUSION ............................................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
618 F.3d 1316 (Fed. Cir. 2010) ........................................................................... 14

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
179 F. Supp. 3d 1256 (Ct. Int'l Trade 2016) ....................................................... 14

*Atl. Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) ............................................................................. 7

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*,
5 F.4th 1367 (Fed. Cir. 2021) ................................................................................ 7

*Carbon Activated Tianjin Co. v. United States*,
650 F. Supp. 3d 1354 (Ct. Int'l Trade 2023),
*aff'd*, No. 2023-2413, 2025 WL 1354994 (Fed. Cir. May 9, 2025). ................. 9

*Catfish Farmers of Am. v. United States*,
641 F. Supp. 2d 1362 (Ct. Int'l Trade 2009) ...................................................... 15

*Clearon Corp. v. United States*,
800 F. Supp 2d 1355 (Ct. Int'l Trade 2011) ....................................................... 18

*Cleo Inc. v. United States*,
501 F.3d 1291 (Fed. Cir. 2007) ............................................................................. 7

*Coal. for Fair Trade in Hardwood Plywood v. United States*,
610 F. Supp. 3d 1344 (Ct. Int'l Trade 2022) ...................................................... 10

*Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States*,
44 F. Supp. 2d 229 (Ct. Int'l Trade 1999) .......................................................... 13

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) ............................................................................................... 7

*Diamond Sawblades Manufacturers' Coal. v. United States*,
301 F. Supp. 3d 1326 (Ct. Int'l Trade 2018) ...................................................... 22

*Fujitsu Gen. Ltd. v. United States*,
88 F.3d 1034 (Fed. Cir. 1996) ............................................................................... 6

*Guangdong Chems. Imp. & Exp. Corp.*,
460 F. Supp. 2d 1365 (Ct. Int'l Trade 2006) ........................................................ 9

*Haixing Jingmei Chem. Prods. Sales Co. v. United States*,
335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ...................................................... 15

*Home Meridian Int'l, Inc. v. United States*,
    772 F.3d 1289 (Fed. Cir. 2014) ........................................................... 9, 19

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992).............................................................................. 7

*Jiaxing Bro. Fastener Co., Ltd. v. United States*,
    822 F.3d 1289 (Fed. Cir. 2016) .................................................. 8, 9, 10, 13

*Marmen Inc. v. United States*,
    134 F.4th 1334 (Fed. Cir. 2025) .......................................................... 22

*Nation Ford Chem. Co. v. United States*,
    166 F.3d 1373 (Fed. Cir. 1999) ............................................................ 9

*Neimenggu Fufeng Biotechnologies Co. v. United States*,
    741 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) ........................................ 15

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ............................................................ 7

*Oracle Am., Inc. v. United States*,
    975 F.3d 1279 (Fed. Cir. 2020) .......................................................... 22

*Qingdao Sea-Line Trading Co v. United States*,
    36 C.I.T. 451 (2012)........................................................................... 11

*QVD Food Co. v. United States*,
    721 F. Supp. 2d 1311 (Ct. Int'l Trade 2010) ........................................ 11

*United States v. Articles of Food . . . Buffalo Jerky*,
    456 F. Supp. 207 (D. Neb. 1978) ......................................................... 17

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009)............................................................................. 6

*Zhejiang DunAn Hetian Metal Co. v. United States*,
    652 F.3d 1333 (Fed. Cir. 2011) ....................................................... 9, 19

*Zhengzhou Harmoni Spice Co. v. United States*,
    675 F. Supp. 2d 1320 (Ct. Int'l Trade 2010) ........................................ 23

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ...................................................................... 6

19 U.S.C. § 1673 ..................................................................................... 8

19 U.S.C. § 1677b(c) .......................................................................8, 9, 11

19 U.S.C. § 1677b(c)(1) ................................................................................ 3, 8

19 U.S.C. § 1677b(c)(1)(B) ........................................................................... 9, 15

19 U.S.C. § 1677b(c)(1)(B) ............................................................................... 8

19 U.S.C. § 1677b(c)(4) ............................................................................... 3, 8

21 U.S.C. § 342(a)(2)(C) ................................................................................. 17

**Regulations**

19 C.F.R. § 351.408(c)(2) ................................................................................. 9

19 C.F.R. § 351.408(c)(3) ............................................................................... 15

21 C.F.R. § 172.160 ...................................................................................... 17

21 C.F.R. § 184.1622 .................................................................................... 17

**Administrative Determinations**

*Alloy and Certain Carbon Steel Threaded Rod from the People's Republic of China*,
    85 Fed. Reg. 8821 (Dep't of Commerce Feb. 18, 2020) (final determination),
    and accompanying IDM ................................................................................ 20

*Certain Activated Carbon from the People's Republic of China; 2010-2011*,
    77 Fed. Reg. 67337 (Dep't of Commerce Nov. 9, 2012) (final results),
    and accompanying IDM ................................................................................ 12

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
    74 Fed. Reg. 11349 (Dep't of Commerce Mar. 17, 2009) (final results),
    and accompanying IDM ................................................................................ 21

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
    72 Fed. Reg. 52052 (Dep't of Commerce Sept. 12, 2007) (final results),
    and accompanying IDM ................................................................................ 21

*Certain Kitchen Appliance Shelving and Racks from the People's Republic of China*,
    78 Fed. Reg. 5414 (Dep't of Commerce Jan. 25, 2013) (final results),
    and accompanying IDM ................................................................................ 16

*Certain Oil Country Tubular Goods From Mexico*,
    90 Fed. Reg. 42933 (Dep't of Commerce Sept. 5, 2025) (final results),
    and accompanying IDM ................................................................................ 23

*Certain Uncoated Paper From Portugal*,
    91 Fed. Reg. 12289 (Dep't of Commerce Mar. 19, 2026) (final results),
    and accompanying IDM ................................................................................ 23

*Hand Trucks and Certain Parts Thereof from the People's Republic of China*,
     78 Fed. Reg. 28801 (Dep't of Commerce May 16, 2013) (final results),
     and accompanying IDM.................................................................................... 16

*Silicon Metal from the Russian Federation*,
     68 Fed. Reg. 6885 (Dep't of Commerce Feb. 11, 2003) (final determination),
     and accompanying IDM.................................................................................... 21

*Utility Scale Wind Towers from the Republic of Korea*,
     90 Fed. Reg. 19672 (Dep't of Commerce May 9, 2025) (final results),
     and accompanying IDM.................................................................................... 21

**Other Authorities**

Import Admin., U.S. Dep't of Commerce,
     Non–Market Economy Surrogate Country Selection Process, *Policy Bulletin* 04.1 (2004),
     https://perma.cc/P4UM-7YC9 ...................................................................... 8, 9

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

|  |  |  |
|---|---|---|
| JIANGXI BROTHER PHARMACEUTICAL CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 25-00187 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| SOLVAY USA, LLC, | ) ) | |
| Defendant-Intervenor. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the agency record filed by plaintiff, Jiangxi Brother Pharmaceutical Co., Ltd. (Jiangxi Brother). *See* Jiangxi Brother Br., ECF. No. 36. Jiangxi Brother challenges certain aspects of the United States Department of Commerce's final determination in the antidumping duty investigation of vanillin from China. *See Vanillin From the People's Republic of China*, 90 Fed. Reg. 24093 (Dep't of Commerce June 6, 2025) (final determination) (P.R. 317). As demonstrated below, Commerce's determination is supported by substantial evidence and is in accordance with law. Accordingly, we respectfully request that the Court sustain Commerce's determination, deny Jiangxi Brother's motion for judgment on the agency record, and enter judgment for the United States.

**STATEMENT PURSUANT TO RULE 56.2**

### I.    Administrative Determination Under Review

The administrative determination under review is Commerce's final determination of the antidumping duty investigation of vanillin from China.  *See Vanillin From the People's Republic of China*, 90 Fed. Reg. 24093 (P.R. 317).  The period of investigation is October 1, 2023 through March 31, 2024.

### II.    Issues Presented for Review

1.    Whether Commerce's use of Global Trade Atlas ("GTA") data as the surrogate value for the by-product hydroquinone is supported by substantial evidence and in accordance with the law.

2.    Whether Commerce's use of surrogate financial statements from Sociedad Química y Minera de Chila S.A. ("SQM") and Soprole Inversiones S.A. ("Soprole") is supported by substantial evidence and in accordance with the law.

3.    Whether this Court should disregard Jiangxi Brother's arguments regarding Commerce's use of the Cohen's *d* test because it did not impact Commerce's final determination and because a challenge to any remand redetermination is speculative.

**STATEMENT OF FACTS**

### I.    Initiation of Commerce's Antidumping Duty Investigation

On June 5, 2024, Commerce received an antidumping duty petition from Solvay USA, LLC ("Solvay" or "Petitioner") concerning imports of vanillin from China.  *See generally* Petitioner's Letter, "Petitions for the Imposition of Antidumping and Countervailing Duties," (June 5, 2024) (P.R. 1).  On July 1, 2024, Commerce initiated an investigation into whether vanillin from China was being sold in the United States at less-than-fair-value.  *See generally*

2

*Vanillin from the People's Republic of China*, 89 Fed. Reg. 54424 (Dep't of Commerce July 1, 2024) (initiation notice) (P.R. 32).

On August 9, 2024, based on responses to quantity and value questionnaires issued by Commerce in June 2024, Commerce selected Jiangxi Brother and Jiaxing Guihua Imp. & Exp. Co., Ltd. (Jiaxing Guihua) for individual examination. *See* Commerce's Memorandum, "Respondent Selection," at 1 (Aug. 9, 2024) (P.R. 72).

## II.     Surrogate Country Selection and Surrogate Values

Because China is a non-market economy (NME), Commerce calculated the normal value (NV) of vanillin based on surrogate values (SV) from a market economy at a comparable level of economic development to China that is a significant producer of comparable merchandise. *See* 19 U.S.C. § 1677b(c)(1), (4). On September 16, 2024, Commerce invited interested parties to submit comments and factual information regarding surrogate country selection and SV data. *See generally* Commerce's Letter, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Sept. 16, 2024) (P.R. 113). On September 23, 2024, and September 26, 2024, Commerce received comments and rebuttal comments on the selection of the primary surrogate country. *See* Jiangxi Brother's Letter, "Comments on Economic Comparability" (Sept. 23, 2024) (P.R. 116); Solvay's Letter, "Rebuttal Comments Regarding Economic Comparability" (Sept. 26, 2024) (P.R. 122). Commerce selected Chile as the appropriate surrogate country in the preliminary determination, noting that all interested parties similarly selected Chile and provided usable information from Chilean sources. *See Vanillin From the People's Republic of China*, 90 Fed. Reg. 4720 (Dep't of Commerce Jan. 16, 2025) (preliminary determination) (P.R. 261), and accompanying preliminary decision memorandum at 1, 7 (P.R. 252) (PDM); *see also* Jiangxi Brother's Letter, "Comments on

Economic Comparability," at 2 (Sept. 23, 2024) (P.R. 116); Jiangxi Brother's Letter, "Comments on Surrogate Country Selection," at 2 (Sept. 29, 2024) (P.R. 127); Solvay's Letter, "Surrogate Country Comments," at 4 (Sept. 30, 2024) (P.R. 129); Jiaxing Guihua's Letter, "Surrogate Country Comments," at 1 (Sept. 30, 2024) (P.R. 131).

From October 25, 2024 through December 20, 2024, Commerce received SV submissions and rebuttal comments from Jiangxi Brother, Jiaxing Guihua, and Solvay.[1]  For the surrogate value of the by-product hydroquinone, Jiangxi Brother submitted UN Comtrade data for Chile and Turkey.  *See* Jiangxi Brother's Letter, "Surrogate Values," at 2, 13-23 (Oct. 25, 2024) (P.R. 159) ("Jiangxi Brother's SV Letter").  Solvay submitted GTA data for Chile.  *See* Solvay's Letter, "30 Days Before Preliminary Determination New Factual Information," at 2 (Dec. 9, 2024) (P.R. 215), and accompanying Exhibit 4 (P.R. 216) ("Solvay's Second SV Comments").  Jiangxi Brother and Solvay both identified 2907.22 as the proper Chilean Harmonized Tarriff Schedule ("HTS") code.  Jiangxi Brother's SV Letter at 2 (P.R. 159); Solvay's Letter, "Petitioner's Rebuttal Case Brief," at 10-12 (May 2, 2025) (P.R. 303).

For the financial ratios, the Petitioner submitted 2023 financial statements from three producers of comparable merchandise:  SQM, Soprole, and Amerigo Resources Ltd (Amerigo).  *See* Solvay's Letter, "Initial Surrogate Value Submission," at 2 (Oct. 25, 2024) (P.R.167), and accompanying Exhibit 13 (P.R. 169); Solvay's Second SV Comments at 2 (P.R. 215), and

---

[1]  *See* Jiangxi Brother's Letter, "Surrogate Values" (Oct. 25, 2024) (P.R. 159); Jiaxing Guihua's Letter, "Surrogate Value Comments" (Oct. 25, 2024) (P.R. 163); Solvay's Letter, "Initial Surrogate Value Submission" (Oct. 25, 2024) (P.R.167); Jiangxi Brother's Letter, "Surrogate Value Rebuttal" (Nov. 1, 2024) (P.R. 177); Jiaxing Guihua's Letter, "Final Surrogate Value Comments" (Dec. 9, 2024) (P.R. 195); Jiangxi Brother's Letter, "Surrogate Values" (Dec. 9, 2024) (P.R. 208); Solvay's Letter, "30 Days Before Preliminary Determination New Factual Information" (Dec. 9, 2024) (P.R. 215); Jiaxing Guihua's Letter, "Rebuttal Final Surrogate Value Comments (Dec. 19, 2024) (P.R. 230); Solvay's Letter, "Final Surrogate Value Rebuttal Comments" (Parts 1 and 2) (Dec. 20, 2024) (P.R. 235-36).

accompanying Exhibits 13-15 (P.R. 216-19). Jiangxi Brother submitted Turkish financial statements and Chilean financial statements from Methanex Corporation ("Methanex"), MolymetNos S.A. ("MNS"), and Compañía Agropecuaria Copeval S.A. ("Copeval"). *See* Jiangxi Brother's Second SV Comments at 2 (P.R. 208), and accompanying Exhibit FSV-3 at FSV-3(b)(ii), (c)(ii), (d)(ii) (P.R. 209-10).

On January 16, 2025, Commerce published its preliminary affirmative determination that vanillin from China was being sold in the United States at less-than-fair-value, calculating a preliminary dumping margin of 186.20%. *See* Preliminary Determination at 2 (P.R. 261), and accompanying PDM at 15 (P.R. 252). Commerce selected Chilean GTA data as the SV for hydroquinone and the financial ratios of SQM and Soprole. PDM at 7, 24 (P.R. 252). Commerce determined not to use the Turkish financial statements or financial statements from Amerigo, Methanex, MNS, or Copeval. PDM at 24 (P.R. 252); *see also* Commerce's Memorandum, "Preliminary Surrogate Values Memorandum," at 9 (Jan. 8, 2024) (P.R. 256) ("SV Memo").

III.    **Commerce's Final Determination**

Commerce published its final determination on June 6, 2025. *See generally* Final Determination (P.R. 317), and accompanying issues and decision memorandum (P.R. 313) (IDM). Commerce made a final affirmative determination of sales at less than fair value, assigning Jiangxi Brother a rate of 190.20%. Final Determination at 2 (P.R. 317). On July 28, 2025, Commerce published the antidumping order. *Vanillin from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 90 Fed. Reg. 35504 (Dep't of Commerce July 28, 2025) (AD/CVD orders) (P.R. 323). In the final determination, Commerce continued to

5

use the Chilean GTA data to value hydroquinone and continued to use the financial ratios from SQM and Soprole.  IDM at 9-14 (P.R. 313).  This action ensued.

## SUMMARY OF ARGUMENT

The Court should sustain Commerce's final determination because it is supported by substantial evidence and otherwise in accordance with the law.  First, Jiangxi Brother's challenge to Commerce's selection of GTA data from Chile to calculate the SV of the by-product hydroquinone must fail because Commerce reasonably concluded that the Chilean GTA data, which was broader than the UN Comtrade data, was the best available information on the record. Second, although Jiangxi Brother argues that Commerce erred in selecting SQM's and Soprole's financial statements, Jiangxi Brother impermissibly asks the Court to reweigh the evidence by deciding, in the first instance, which of the financial statements available to Commerce was better than the other.  Finally, to the extent Jiangxi Brother challenges Commerce's use of the Cohen's $d$ test in the underlying investigation, there is no controversy for this Court to review because it is undisputed that Commerce's use of the Cohen's $d$ test did not impact the outcome in this case.  Because Commerce's selection of the GTA data and financial statements from SQM and Soprole were based on substantial evidence and otherwise in accordance with law, this Court should deny Jiangxi Brother's motion, sustain Commerce's determination, and enter judgment in favor of the United States.

## ARGUMENT

### I.    Standard of Review

The Court will uphold Commerce's determination, finding, or conclusion if it is supported by "substantial evidence on the record" and is otherwise "in accordance with law." *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The

6

specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.").  Substantial evidence is "'more than a mere scintilla' and 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence."  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render findings unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Further, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion.  *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *see also Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367, 1374 (Fed. Cir. 2021) (explaining that this "highly deferential review standard recognizes Commerce's special expertise in antidumping duty investigations," and that Federal Circuit affords "tremendous deference" to Commerce's administration of antidumping laws (quotation omitted)).  It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record."  *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007).  A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal."  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (quotation omitted).

**II.** **Legal Framework for Surrogate Value Selections**

An antidumping duty represents the amount by which the NV of subject merchandise exceeds its "export price (or the constructed export price)." 19 U.S.C. § 1673. Under 19 U.S.C. § 1677b(c)(1), if subject merchandise is exported from an NME and the information does not permit the calculation of NV using home market prices, third country prices, or constructed value, Commerce determines NV using a factors-of-production methodology, including raw materials, labor, and utilities. *See* 19 U.S.C. § 1677b(c). To those factors, Commerce also adds "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." *Id.*

Commerce must, "to the extent possible," use surrogate factors from "one or more market economy countries that are—{(1)} at a level of economic development comparable to that of the nonmarket economy country, and {(2)} significant producers of comparable merchandise." *Id.* § 1677b(c)(4). If more than one market economy country is both economically comparable and a significant producer of comparable merchandise, then Commerce evaluates and compares the reliability and completeness of the record data from those countries. Import Admin., U.S. Dep't of Commerce, Non–Market Economy Surrogate Country Selection Process, *Policy Bulletin* 04.1 (2004), https://perma.cc/P4UM-7YC9 (Policy Bulletin 04.1).

Commerce must select the "best available information" on the record to value the factors of production. *Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1294 (Fed. Cir. 2016) (citing 19 U.S.C. § 1677b(c)(1)(B)). Commerce possesses "broad discretion" in deciding what record evidence meets the criteria. *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011) (citations omitted); *see also Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (stating that § 1677b(c) "accords Commerce wide

8

discretion" to determine what constitutes "best available information").  The antidumping statute "does not mandate that Commerce use any particular data source" in reaching its determination. *Guangdong Chems. Imp. & Exp. Corp.*, 460 F. Supp. 2d 1365, 1368-69 (Ct. Int'l Trade 2006) (citing 19 U.S.C. § 1677b(c)(1)(B)).  In practice, Commerce strives to select, to the extent practicable, SVs that are product-specific, representative of a broad-market average, publicly available, contemporaneous with the period of investigation or review, and tax and duty exclusive.  *Jiaxing Bro.*, 822 F.3d at 1293; *see generally* Policy Bulletin 04.1.

Commerce also has a regulatory preference to use as much data as possible from a single primary surrogate country.  19 C.F.R. § 351.408(c)(2); *Jiaxing Bro.*, 822 F.3d at 1294, 1294 n.3 (citing Policy Bulletin 04.1).  Commerce will "only resort to a secondary surrogate country if data from the primary surrogate country are unavailable or unreliable." *Carbon Activated Tianjin Co. v. United States*, 650 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2023) (quotation omitted), *aff'd*, No. 2023-2413, 2025 WL 1354994 (Fed. Cir. May 9, 2025).

Commerce may rely on "imperfect" data.  *Jiaxing Bro.*, 822 F.3d at 1301 (citing *Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014)).  Furthermore, Commerce is not required to duplicate the precise experience of the manufacturer in the NME. *Nation Ford*, 166 F.3d at 1377.  Instead, Commerce seeks to identify and to rely on the record data that "most accurately represents the fair market value" of the relevant factors of production. *Id.*

Accordingly, given Commerce's discretion to determine the "best available information," and the fact-specific nature of this deferential case-by-case inquiry, the Court considers "not whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Jiaxing*, 822 F.3d at

1301-02.  For this Court to sustain Commerce's determination, Commerce "need not prove that its methodology was the only way or even the best to calculate SVs for factors of production as long as it was a reasonable way."  *Coal. for Fair Trade in Hardwood Plywood v. United States*, 610 F. Supp. 3d 1344, 1371 (Ct. Int'l Trade 2022) (quotation omitted).

### III.   Commerce's Use of GTA Data as The Surrogate Value for The By-Product Hydroquinone Is Supported by Substantial Evidence And in Accordance with the Law

When calculating the applicable by-product offsets for hydroquinone, Commerce used Chilean data from the GTA, because Commerce concluded that the GTA data is "based on a broader market average than the UN Comtrade data" that Jiangxi Brother submitted.  IDM at 10 (P.R. 313); SV Memo at 6 (P.R. 256).  Specifically, the GTA data "is based on 10 imports of hydroquinone from at least five different market-economy countries in Europe and North America to Chile in six different months within the {period of investigation}."  IDM at 10 (P.R. 313).  The GTA data contains a primary and secondary unit of measurement:  (1) kilonewtons and (2) kilograms.  Solvay's Second SV Comments at Exhibit 4 (P.R. 216).  Because Jiangxi Brother's factors of production data uses kilograms, Commerce used the GTA data provided in kilograms.  IDM at 10 (P.R. 313).

Although there is no dispute that the by-product hydroquinone is properly valued under the Chilean HTS code 2907.22, IDM at 9 (P.R. 313), Jiangxi Brother contends that Commerce erred when it relied on the GTA data that Solvay submitted.  Jiangxi Brother Br. at 8.  First, Jiangxi Brother asserts the GTA data contains internal inconsistencies with regard to both quantity values and units of measurement.  *Id.* at 8-9.  Second, Jiangxi Brother argues that Commerce should have relied on the public data that Jiangxi Brother submitted rather than the data Solvay submitted from GTA, a private entity.  *Id.* at 9.  Third, Jiangxi Brother claims that

Commerce should have relied on Jiangxi Brother's data because it is broader than the data submitted by Solvay.  *Id.* at 9-10.  None of these arguments are availing, because Commerce's reliance on GTA data is reasonable.

In accordance with 19 U.S.C. § 1677b(c), Commerce's practice, when considering the best available information for valuing factors of production is to select, to the extent practicable, SVs which are:  (1) broad market averages; (2) product-specific; (3) tax exclusive, non-export average values; (4) contemporaneous with, or closest in time to, the POI; and (5) publicly available.  IDM at 9 (P.R. 313); *see also Qingdao Sea-Line Trading Co v. United States*, 36 C.I.T. 451, 454 (2012); *QVD Food Co. v. United States*, 721 F. Supp. 2d 1311, 1315 (Ct. Int'l Trade 2010).

In its evaluation of the best available data, Commerce determined that the GTA data is "based on a broader market average than the UN Comtrade data" that Jiangxi Brother submitted. IDM at 10 (P.R. 313); SV Memo at 6 (P.R. 256).  Specifically, the GTA data "is based on 10 imports of hydroquinone from at least five different market-economy countries in Europe and North America to Chile in six different months within the {period of investigation}."  IDM at 10 (P.R. 313) (citing SV Memo at 6 (P.R. 256) and Attachment 1 (P.R. 257)).  By contrast, the UN Comtrade data that Jiangxi Brother submitted is based on only six imports of hydroquinone from four countries in Europe and North American in four different months within the period of investigation.[2]  *Id.*  Commerce also found that GTA's data is publicly available, pointing to another case in which Commerce had previously found GTA's data to be publicly available.

---

[2]  Because the GTA data covers more imports, countries, and months, Jiangxi Brother's citationless assertion that "{e}very shipment included in the raw data provided by the petitioner is also reflected in the raw dated provided by {Jiangxi Brother}" is inaccurate.  Jiangxi Brother Br. at 9-10.

IDM at 10 (P.R. 313) (citing *Certain Activated Carbon from the People's Republic of China; 2010-2011*, 77 Fed. Reg. 67337 (Dep't of Commerce Nov. 9, 2012) (final results), and accompanying IDM at Comment 1).

In sum, the GTA data is publicly available and incorporates more imports, more countries, and more months within the period of investigation, all of which support Commerce's conclusion that the GTA data is broader and that Commerce's selection of the GTA data is reasonable. Jiangxi Brother's arguments to the contrary do not alter this conclusion.

Although the GTA data lists the unit of measurement for the primary value as "kilonewtons" rather than "kilograms," Commerce did not rely on the primary unit of measurement; instead, it relied on the unit of measurement that corresponded with the data Jiangxi Brother submitted. IDM at 10 (P.R. 313); Jiangxi Brother's SV Surrogate Values Letter at 2-3 and Exhibit SVR-1 (P.R. 177 and P.R. 178). The two units of measurement were provided separately, Solvay's Second SV Comments at Exhibit 4 (P.R. 216), allowing Commerce to rely only on the data provided in kilograms.

While Jiangxi Brother contends that the GTA data is inconsistent between units of measurement, Jiangxi Brother Br. at 9-11, Commerce addressed that argument, as explained further below, and found that Jiangxi Brother failed to demonstrate that there is an inaccuracy in the data provided in kilograms. IDM at 10 (P.R. 313). Commerce's finding is supported by substantial evidence because all Jiangxi Brother provided to support its assertions is that the primary quantity provided in kilonewtons differed from the primary quantity provided in kilograms. Jiangxi Brother SV Rebuttal at 2-3 (P.R. 177). However, as Jiangxi Brother has acknowledged, kilonewtons are units of force while kilograms are units of weight, Jiangxi

12

Brother Br. at 8; accordingly, Jiangxi Brother has not shown that the measurements in kilonewtons should match the measurements in kilograms.

When presented with a choice between broader data that had two units of measurement for which Jiangxi Brother alleged but did not prove there was an inaccuracy and narrower data, Commerce reasonably chose to rely on the broader data, because "{t}he data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement for the data be perfect." *Jiaxing Bro. Fastener*, 822 F.3d at 1301. Commerce's selection of GTA data to calculate the value of hydroquinone by-product is thus within the standard of reasonableness. *See Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States*, 44 F. Supp. 2d 229, 258 (Ct. Int'l Trade 1999) (stating Commerce "need not prove that its methodology was the only way or even the best to calculate SVs for factors of production as long as it was a reasonable way").

Turning to Jiangxi Brother's argument that Commerce should have selected the UN Comtrade data because, given "a choice between a public source provided by a well-recognized public organization (the United Nations) and a private source of data, . . . the public source should be given precedence," Jiangxi Brother Br. at 9, the relevant factor is whether the data is publicly available, not whether the data source is a public entity. IDM at 9 (P.R. 313); Policy Bulletin No. 04.1. In essence, Jiangxi Brother, without citation, asks this Court to conclude that Commerce's selection of GTA data is unreasonable based on a factor that Jiangxi Brother has invented for purposes of litigation. However, Jiangxi does not dispute that the record supports Commerce's finding that the GTA data is publicly available.

Similarly, with respect to Jiangxi Brother's argument that the UN Comtrade data is broader, Jiangxi Brother is merely asking this Court to reweigh the evidence before Commerce.

13

*Contra An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 179 F. Supp. 3d 1256, 1272 (Ct. Int'l Trade 2016) (declining to reweigh evidence regarding Commerce's broad average finding, amongst other findings).  Without acknowledging that the GTA data includes ten imports to the UN Comtrade data's six, five market economy countries to UN Comtrade's four, and six months to UN Comtrade's four, Jiangxi Brother claims that the UN Comtrade's data is broader because it the total value of the UN Comtrade's data is higher.  Jiangxi Brother Br. at 10.  However, Commerce's decision to focus on breadth of the data rather than total value of the data submitted is consistent with the objective to consider whether the data represents a broad market average.

For the foregoing reasons, Commerce's reliance on GTA data is reasonable and supported by substantial evidence.  It is immaterial that Jiangxi Brother may have selected data based on the total value of imports or its being compiled by a public entity because "Commerce has broad discretion to determine the best available information."  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 618 F.3d 1316, 1322 (Fed. Cir. 2010).

**IV.**   **Commerce's Selection of Surrogate Financial Statements From SQM And Soprole Is Supported by Substantial Evidence And in Accordance With The Law**

Jiangxi Brother disagrees with Commerce's choice of surrogate financial statements, asserting that Commerce erred when relying on financial statements from SQM and Soprole and when rejecting financial statements from Methanex, Molymet, and Copeval.  Jiangxi Brother Br. at 11-12.  This case presents a situation in which no financial statement was perfect, and Commerce was required only to provide a reasonable explanation to support its decision to select the best available financial statements.  *See Catfish Farmers of Am. v. United States*, 641 F. Supp. 2d 1362, 1377 (Ct. Int'l Trade 2009) ("Where Commerce is faced with the choice of selecting from among imperfect alternatives, it has the discretion to select the best available information

14

for a surrogate value so long as its decision is reasonable.").  Commerce in this case explained its reasoning for relying on SQM's and Soprole's financial statements and rejecting those of Methanex, Molymet, and Copeval.  IDM at 11-14 (P.R. 313).  Because Commerce's decision is reasonable and supported by substantial evidence, Jiangxi Brother's mere disagreement with Commerce's selection is insufficient ground for this Court to reject Commerce's determination. *See Haixing Jingmei Chem. Prods. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) (rejecting arguments amounting to "mere disagreement" with Commerce's evaluation of evidence).

After Commerce assesses the value of the factors of production, there "shall be added an amount for general expenses and profit . . . based on the best available information regarding the values of such factors in a market economy country."  19 U.S.C. § 1677b(c)(1)(B).  To value expenses, Commerce will normally calculate a respondent's (1) manufacturing overhead; (2) selling, general, and administrative (SG&A) expenses; and (3) profit, using publicly available financial statements of companies producing "identical or *comparable* merchandise" from the primary surrogate country.  19 C.F.R. § 351.408(c)(3) (emphasis added); *see also* PDM at 23 (P.R. 252); *Neimenggu Fufeng Biotechnologies Co. v. United States*, 741 F. Supp. 3d 1354, 1360 (Ct. Int'l Trade 2024).  Commerce's preference is to derive surrogate overhead expenses, SG&A expenses, and profit using financial statements that:  (a) cover a period contemporaneous with the period of investigation; (b) show a profit; (c) are from companies with a production experience similar to that of the mandatory respondent; and (d) are not distorted or otherwise unreliable, such as financial statements indicating a company received subsidies.  PDM at 23–25 (citing *Hand Trucks and Certain Parts Thereof from the People's Republic of China*, 78 Fed. Reg. 28801 (Dep't of Commerce May 16, 2013) (final results), and accompanying IDM at

15

Comment 2, and *Certain Kitchen Appliance Shelving and Racks from the People's Republic of China*, 78 Fed. Reg. 5414 (Dep't of Commerce Jan. 25, 2013) (final results), and accompanying IDM at Comment 1).

### A.    The Use of SQM's Financial Statements is Reasonable

To challenge Commerce's reliance on SQM's financial statements, Jiangxi Brother raises three arguments :  (1) SQM operates in a different industry from Jiangxi Brother; (2) SQM's operations are dissimilar from Jiangxi Brother's operations because a large portion of SQM's business is dissimilar and highly profitable; and (3) SQM's financial statements are unreliable because they have been subsidized.  Jiangxi Brother Br. at 11-15.  Contrary to these arguments, Commerce's decision to use SQM's financial statements is reasonable because SQM is a producer of comparable merchandise.

Commerce found that SQM is a Chilean producer of merchandise comparable to vanillin, and substantial evidence supports Commerce's finding.  IDM at 12 (P.R. 313).  Vanillin is a flavor component in vanilla beans that can be naturally and synthetically produced and is used in flavorings and food products.  Solvay's Letter, "Petitions for the Imposition of Antidumping and Countervailing Duties," at 3 (June 5, 2024) (P.R. 1); Jiangxi Brother's Letter, "Response to Section A," at 9-10 (Sept. 6, 2024) (P.R. 101); Jiangxi Brother's Letter, "Response to Section C," at Exhibit C-2 (Oct. 1, 2024) (P.R. 132).  Jiangxi Brother produces vanillin synthetically using chemical inputs.  Jiangxi Brother's Letter, "Response to Section D," at Exhibits D-1 & D-7 (Oct. 2, 2024) (P.R. 135).

SQM likewise produces chemical products, including chemicals for human consumption like iodine and nitrate.  IDM at 12 (P.R. 313); Solvay's Second SV Comments, Exhibit 13, at 25, 36 (P.R. 169).  According to SQM's Annual Report, the company is a world-leading producer of "iodine and iodine derivatives, which are used in a wide range of medical, pharmaceutical,

16

agricultural, and industrial applications{.}"  IDM at 12 (P.R. 313) (citing Solvay's SV Comments

at 25 (P.R. 167)).  In addition, SQM produces sodium nitrate and potassium nitrate, Solvay's SV

Comments at 25 (P.R. 167), which are food additives.  *See e.g., United States v. Articles of

Food . . . Buffalo Jerky*, 456 F. Supp. 207, 211 (D. Neb. 1978) ("{S}odium nitrate and sodium

nitrite are food additives within the meaning of 21 U.S.C. § 342(a)(2)(C){.}"); 21 C.F.R.

§ 172.160 ("The food additive potassium nitrate may be safely used as a curing agent in the

processing of cod roe, in an amount not to exceed 200 parts per million of the finished roe.").

Potassium chloride is also a basic chemical used in food processing, among other uses, and as

such, must be produced to exacting standards to be fit for human consumption, similar to

vanillin.  *See, e.g.*, 21 C.F.R. § 184.1622 (defining potassium chloride and relevant U.S.

standards for use as food additive).  Thus, although SQM has a mining business, SQM also

produces chemicals for human consumption, either as food additives or medical agents, which

Commerce reasonably concluded is comparable to vanillin.  IDM at 12 (P.R. 313).

Jiangxi Brother's arguments regarding SQM receiving subsidies are similarly

unpersuasive because Jiangxi Brother has not identified a subsidy SQM received that has been

countervailed.  *Cf.* Jiangxi Brother Br. at 12 (P.R. 313).  Consistent with Commerce's practice,

which this Cout has acknowledged, Commerce will typically exclude a financial statement from

consideration "if a financial statement contains a reference to a specific subsidy program found

to be countervailable in a formal {countervailing duty} determination."  *Clearon Corp. v. United

States*, 800 F. Supp 2d 1355, 1359 (Ct. Int'l Trade 2011).  However, "{i}f a financial statement

contains only a mere mention that a subsidy was received, and for which there is no additional

information as to the specific nature of the subsidy, Commerce will not exclude the financial

statement from consideration." *Id.*

17

Here, Commerce found that the record did not support Jiangxi Brother's contention that SQM received disqualifying subsidies from the Chilean government. IDM at 12 (P.R. 313). Although Jiangxi Brother pointed to a single government grant, Jiangxi Brother did not identify, nor could Commerce find, any case involving a formal countervailing duty determination for the grant that SQM received. IDM at 12 (P.R. 313); *see also* Solvay's Second SV Comments, Exhibit 13, at F-103 (P.R. 169) (stating SQM received "unconditional government grant . . . related to the permeance of its commercial office of SQM Shanghai Chemicals Co. Ltd"). Indeed, Jiangxi Brother concedes that the grant itself is not disqualifying. Jiangxi Brother Br. at 15. Accordingly, Jiangxi Brother's claim regarding subsidies is insufficient to challenge Commerce's reliance on SQM's financial statement.

### B.    The Use of Soprole's Financial Statement Is Reasonable

Jiangxi Brother seeks to differentiate its operations from those of Soprole, claiming that Soprole is in the mass consumption dairy industry rather than the fine chemical industry and sells products to the consumer retailers rather than industrial users. Jiangxi Brother Br. at 15-16. However, Commerce is not required to rely only on financial statements of producers identical to Jiangxi Brother; Commerce need only act reasonably in selecting financial statements, and it has done so with its selection of Soprole.

Commerce's determination that Soprole is a Chilean producer of merchandise comparable to vanillin is supported by substantial evidence. IDM at 13 (P.R. 313). Akin to Jiangxi Brother's sale of vanillin to industrial users, Soprole's financial statements specify that Soprole's "main customers are warehouse, food service, wholesalers, supermarkets, and distributors"—not retail consumers. Solvay's Second SV Letter at Exhibit 15 (P.R. 218 at 94). To create its products, Soprole, like Jiangxi Brother, uses various chemical ingredients. Solvay's Second SV Letter at Exhibit 16 (P.R. 219 at 129, 131, 133). Jiangxi Brother's assertions that

18

mixing chemicals is different from reacting chemicals, Jiangxi Brother Br. at 16, ignores that there is no requirement for Commerce to use financial statements for companies identical to the respondent. *See Home Meridian Int'l Inc.*, 772 F.3d at 1296 ("The data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect."). Instead, this Court assesses "whether a reasonable mind could conclude that Commerce chose the best available information." *Zhejiang DunAn Hetian Metal Co.*, 652 F.3d at 1341 (citation omitted). Here, Commerce reasonably determined to use the financial statements of a company that uses chemicals to produce food products for wholesale, which is like the synthetic production of vanillin, a food additive, for industrial use.

C.    **Commerce Reasonably Declined to Select Financial Statements from Methanex, MNS, and/or Copeval**

Jiangxi Brothers claims that Commerce should have relied on the financial statements of Methanex, MNS, and Copeval, Jiangxi Brother Br. at 17-20; however, Commerce's rejection of these financial statements is reasonable and its conclusion that these financial statements contained flaws is supported by substantial evidence.

For Methanex, Commerce explained that its financial statements are "consolidated financial statements covering their global operations," rather than specific financial statements for operations in Chile, and that it is Commerce's practice to use country-specific financial statements, when available, rather than consolidated financial statements. IDM at 14 (P.R. 313); *see also Alloy and Certain Carbon Steel Threaded Rod from the People's Republic of China*, 85 Fed. Reg. 8821 (Dep't of Commerce Feb. 18, 2020) (final determination), and accompanying IDM at Comment 5. Additionally, Commerce explained that it has a longstanding practice of not relying on producers headquartered outside the primary surrogate country—in this case Chile, while Methanex is a multinational company incorporated in Canada and its consolidated

19

financial statements were audited by a Canadian accounting firm. *Id.* (citing Jiangxi Brother's Second SV Letter at Exhibit FSV-3(b)(ii) at 45-52, 83 (P.R. 209)); *see Alloy and Certain Carbon Steel Threaded Rod from the People's Republic of China*, 85 Fed. Reg. 8821 (Dep't of Commerce Feb. 18, 2020) (final determination), and accompanying IDM at Comment 5.[3]  Further, although Methanex has operations in six countries, only 12 percent of its sales revenue is derived from South American sales, demonstrating that a small fraction of the financial statement provided pertained to Chile.  *See* Jiangxi Brother's Surrogate Value Letter 2 at Exhibit FSV-3 at 1, 68 (P.R. 213).

Like with Methanex, the financial statements provided for Molymet were global and consolidated, which does not align with Commerce's practice to rely on available country-specific financial statements.  Jiangxi Brother Second SV Letter at Exhibit FSV-3(c)(ii) at 67, 209-10 (P.R. 209, 210).  Although Molymet had unconsolidated, unsummarized financial statements for its Chilean subsidiary, MNS, Commerce found that MNS's financial statements did not provide sufficient information for Commerce to accurately calculate either an overhead or SGA ratio.  IDM at 14 (P.R. 313) (citing Jiangxi Brother Second SV Letter at Exhibit FSV-3(c)(ii) at 198 (P.R. 210)).  Jiangxi Brother concedes that "the level of detail is not high" but nevertheless argues that the information provided can be "allocated" to the correct lines.  Jiangxi Brother Br. at 19.  However, Jiangxi Brother's argument misses the mark—Commerce did not find that the information provided could not be allocated, instead, it found that the information was not sufficient to "accurately calculate either an overhead or SGA ratio."  IDM at 14 (P.R. 313).  Further, the exhibit to which Jiangxi Brother cites to argue that the financial statements are

---

[3]  Although Jiangxi Brother asserts that this practice is immaterial because Jiangxi Brother claims there are no other useable financial statements in the record, Jiangxi Brother Br. at 19, as we explain above, Soprole's and SQM's financial statements are useable, *see supra* Part IV.A-B.

20

sufficient relies on information from Molymet's consolidated financial statements, not MNS's financial statements. Jiangxi Brother Br. at 19 (citing Exhibit FSV-3(c)(i) (P.R. 209)); *see also* Exhibit FSV-3(c)(ii) at 128-30.

Finally, Commerce did not use Copeval's financial statements because Copeval reported loss in its income statement. IDM at 14 (citing Jiangxi Brother's Second SV Letter at Exhibit FSV-3(d)(i) (P.R. 213)). Commerce only uses financial statements from profitable companies because profit ratio is one of the three surrogate financial ratios Commerce uses to calculate surrogate values in NME cases. *See Silicon Metal from the Russian Federation*, 68 Fed. Reg. 6885 (Dep't of Commerce Feb. 11, 2003) (final determination), and accompanying IDM at Comment 10; *see also Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 72 Fed. Reg. 52052 (Dep't of Commerce Sept. 12, 2007) (final results), and accompanying IDM at Comment 2B; *Utility Scale Wind Towers from the Republic of Korea*, 90 Fed. Reg. 19672 (Dep't of Commerce May 9, 2025) (final results), and accompanying IDM at Comment 1 (citing *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 74 Fed. Reg. 11349 (Dep't of Commerce Mar. 17, 2009) (final results), and accompanying IDM at Comment 1)). Jiangxi Brother argues that Copeval should be considered profitable because Copeval recorded gross profits between July 1, 2024 and September 30, 2024, Jiangxi Brother Br. at 19; however, Commerce acknowledged that profit period but explained that only lasted three months and all of those months were outside the relevant period of investigation, which is October 1, 2023 through March 31, 2024. IDM at 14 (P.R. 313).

Substantial evidence thus supports Commerce's findings that each of the financial statements Jiangxi Brother submitted had flaws. Moreover, Commerce provided reasoning, supported by the record, for why it selected Soprole's and SQM's financial statements instead.

Accordingly, Jiangxi Brother's arguments boil down to a difference in opinion on which financial statements Commerce should have selected, but "the mere fact that the record may support a different choice of financial statement does not mean Commerce's choice is unsupported by substantial evidence." *Diamond Sawblades Manufacturers' Coal. v. United States*, 301 F. Supp. 3d 1326, 1355 (Ct. Int'l Trade 2018).

## V.     Jiangxi Brother's Arguments Regarding Commerce's Differential Pricing Methodology Are Immaterial And Unripe for Adjudication

In the underlying determination Commerce applied the Cohen's *d* test in its differential pricing analysis. PDM at 17-19 (P.R. 252). Jiangxi Brother argues that, under *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025), Commerce would be precluded from applying the Cohen's *d* test in any differential pricing analysis on remand. Jiangxi Brother Br. at 20. However, Jiangxi Brother concedes that Commerce's differential pricing methodology had no impact on the final determination at issue in this case and that the issue is therefore unripe. *Id.* at 2, 20. In the undisputed absence of any harmful error, this Court should sustain Commerce's decision. *See Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (explaining that remand of agency action is unnecessary when error had no impact on agency decision).

Assuming this Court issues a remand order that would necessitate Commerce's revising its differential pricing analysis, only at that time would Commerce then determine the appropriate differential pricing methodology to apply. Moreover, because Commerce has stopped applying the Cohen's *d* test in its differential pricing analysis, Jiangxi Brother's assumption that any remand redetermination will use the Cohen's *d* test is entirely speculative. *See, e.g., Certain Uncoated Paper From Portugal*, 91 Fed. Reg. 12289 (Dep't of Commerce Mar. 19, 2026) (final results), and accompanying IDM at Comment 1; *Certain Oil Country Tubular Goods From Mexico*, 90 Fed. Reg. 42933 (Dep't of Commerce Sept. 5, 2025) (final results), and

22

accompanying IDM at Comment 9.  In sum, Jiangxi Brother's arguments regarding Cohen's *d* are speculative and therefore immaterial to the Court's resolution of this case.  *See Zhengzhou Harmoni Spice Co. v. United States*, 675 F. Supp. 2d 1320, 1335-36 (Ct. Int'l Trade 2010) (rejecting challenge to forthcoming remand results as speculative).

## CONCLUSION

For these reasons, we respectfully request that the Court deny Jiangxi Brother's motion for judgment on the agency record and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

GEOFFREY M. LONG
Assistant Director

/s/Rebecca T. Mitchell

OF COUNSEL:                          REBECCA T. MITCHELL
JOSHUA ANGELO                        Trial Attorney
Attorney                             U.S. Department of Justice
Office of the Chief Counsel          Civil Division
   for Trade Enforcement and Compliance    Commercial Litigation Branch
U.S. Department of Commerce          P.O. Box 480
Washington, D.C.                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Telephone: (202) 616-0467
                                     E-mail: Rebecca.Mitchell@usdoj.gov

June 26, 2026                        *Attorneys for Defendant*

23

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(b)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6554 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Rebecca T. Mitchell</u>
REBECCA T. MITCHELL